## Case No. 15,212.

### UNITED STATES v. GIVINGS et al.

[1 Spr. 75.] [1]

District Court, D. Massachusetts. April, 1844.

SEAMEN—REFUSAL TO GO TO SEA—SEAWORTHINESS OF VESSEL—RESISTING ATTEMPT TO COMPEL GOING TO SEA—REVOLT.

1. If seamen really believe, upon reasonable grounds, that a vessel is unseaworthy, and ask for a survey, they are not bound to go to sea in her, till such request is granted. And this is so, although the jury in a very doubtful case, should incline to think that the vessel was, in fact, seaworthy.

2. If the masts are rotten and unfit for the voyage, the crew are not bound to go to sea, although the master makes a verbal promise that he will keep in certain latitudes, and carry certain sail, for which the masts are sufficient.

3. In such case, seaman may resist an attempt of the master to compel them to go to sea.

4. If, in making such resistance, an individual commits an unlawful act, he alone is liable therefor.

The prisoners [Henry Givings and others], fourteen in number, were indicted for a revolt on board the whale ship Hibernia, of New Bedford, while lying at Port Louis, in the Isle of France. From the evidence it appeared, that when the ship had been about twelve months out, and was nearly full of oil, the masts were discovered to be rotten, and were fished by pieces of a spare topmast, cut up for that purpose. Port Louis was the first port the ship made, after this discovery. On arriving there, a petition was presented to the American consul, signed by the three boat-steerers the carpenter, the cooper, and the blacksmith, and all the foremast hands, requesting that a survey might be had on the masts, before proceeding to sea. No notice being taken of this petition, several of the crew went to the office of the consul, who, however, refused to do anything in the matter, and treated the defendants very roughly. The men afterwards made another appeal to the master alone, who refused to call a survey, and asked the men why they did not run away. They continued to perform all their duty, until the master ordered them to heave up the anchor. They then refused, saying they would not go to sea, unless the masts were surveyed, and pronounced seaworthy. The master then ordered his officers to seize one of the men, named Dawson.

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

who was the spokesman, and bring him aft. From this point, there was much conflicting evidence; but the facts appeared to be, that the officers attempted to seize Dawson, but were forcibly prevented from so doing by the men. The master then procured a sword, and repeated the attempt, but was again prevented, and the sword taken from him. After this, there appears to have been no further difficulty. The master called the men aft, and asked them, if they would go on the voyage, which they still refused to do, except upon the condition of a survey. The master, upon this, sent for a force of police, and had them all put in prison; and in a few days sailed for home without them. The men remained in prison forty-seven days, and were brought home for trial in another vessel. As to the condition of the masts, there was evidence that the vessel came home with her masts standing; and the master and officers testified that they bore a very heavy press of sail, in bad weather, without injury. But there was other evidence, showing that they were condemned and sold, on the arrival of the Hibernia, and that they were then very rotten, and unsafe for the purposes of a whaling voyage. It also appeared that the master made no offer to the men, to return home immediately in the ship, but insisted on their going on a cruising ground, which had the reputation of being stormy, making, however, certain promises, as to the latitudes within which he would keep, and the sail he would carry.

R. H. Dana, Jr., with whom was J. H. Prince, for the prisoners, rested the defence upon the right of the seamen to a survey, upon reasonable grounds of apprehension of unseaworthiness, and their right to refuse to go to sea without such survey.

Franklin Dexter. Dist. Atty. for the United States, argued, that, on the facts, the defendants were guilty of a revolt.

SPRAGUE, District Judge (charging jury.) If the crew of a vessel, acting in good faith, and upon reasonable grounds of belief, refuse to go to sea, because of the unseaworthiness of the vessel, they cannot be found guilty of revolt, even though the jury should, upon all the evidence, be in doubt as to the actual seaworthiness of the vessel; or even, if they should, upon a measuring cast (Stat. July 20. 1840, c. 48, §§ 12–14; 5 Stat. 396; The Hibernia [Case No. 6,455], and cases there cited), be inclined to think she might have been seaworthy; for a reasonable apprehension, fairly entertained, takes away the element of "unlawful and wilful" resistance, necessary to constitute the offence. Full force should be given to the necessity of upholding the power of the master, and to the policy of requiring seamen to submit, in some instances, even to evident injustice, waiting for redress from the home tribunals; but a distinction should be drawn between cases of ordinary injuries, which can be compensated by pecuniary damages, and those where the wrong about to be done is of so serious a nature, as not to be measured by subsequent compensation in money; as when life or limbs are put in danger. The law regards life, and the safety of limbs, as of a higher value than the cost of surveys or repairs. Also, that if the masts were unseaworthy for the purposes of the voyage, the seamen were not obliged to go to sea, upon any merely verbal promise of the master, that he would keep in certain latitudes, and carry certain sail, even if the masts might be safe, in case these promises were complied with.

As to the charge of "evolt, in resisting the attempt to seize Dawson; if the men were justifiable in refusing to go to sea without a survey, the master had no right to attempt to compel them; and if he used, or threatened, violence, upon the men, or any of them, apparently for the purpose of forcing them to go to sea, they had a right, in self-defence, to use such force as was necessary to resist his attempt. If the general object of resisting such attempt was legal, the particular acts of any one person, who might, in the course of the resistance, go farther than was necessary, being no part of the general object, others would not be responsible therefor. For such individual trespasses, the party committing them would alone be liable.

Verdict "Not guilty."

See U. S. v. Borden [Case No. 14,625]; Shorey v. Rennell [Id. 12,806]; Knowlton v. Boss [Id. 7,901].

[NOTE. Immediately after their acquittal, the defendants filed a libel for subtraction of wages against the Hibernia. The court decided that the refusal of the men to obey the master's orders was justifiable, and that the men were entitled to their full lays. Case No. 6,455.]